UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                     :
THE PEOPLE OF THE STATE OF NEW YORK         :
by ANDREW M. CUOMO, Attorney General of     :`      ECF Case
the State of New York,                                :
                                                     :      07 Civ. 10397 (LTS) (HBP)
                        Plaintiff,           :
                                                     :
        -against-                            :
                                                     :
FIRST AMERICAN CORPORATION and              :      ORAL ARGUMENT REQUESTED
FIRST AMERICAN EAPPRAISEIT,                  :
                                                     :
                        Defendants.          :
------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
## OF ITS MOTION TO REMAND TO NEW YORK STATE COURT

        Plaintiff, the People of the State of New York, by Andrew M. Cuomo, Attorney General of

the State of New York (the "State" or the "Attorney General"), submits this memorandum of law

in support of its motion to remand this case to the Supreme Court of the State of New York, New

York County, pursuant to 28 U.S.C. § 1447.


## PRELIMINARY STATEMENT

        This is an action originally filed in New York state court by the New York State Attorney

General under New York consumer protection statutes and New York common law. Despite the

obvious state-law character of the State's claims, defendants removed the case to federal court,

asserting that federal jurisdiction exists under 28 U.S.C. § 1331, which covers civil actions "arising

under" federal law.  Notice of Removal at ¶ 2.

As the asserted basis for federal "arising under" jurisdiction, defendants appear to rely on the exceedingly narrow doctrine under which a state-law claim nevertheless may be deemed to "arise under" federal law for jurisdictional purposes where (1) the claim necessarily presents a question of federal law (2) that is substantial and contested, and where (3) providing a federal forum for claims of that nature would not disrupt the division of judicial labor between the federal and state courts. Because none of these conditions is actually satisfied here, the case should be remanded to state court for lack of federal subject matter jurisdiction.

## BACKGROUND

### A.     Procedural History

On November 1, 2007, the State filed this lawsuit in New York State Supreme Court, New York County, pursuant to New York Executive Law § 63(12), New York General Business Law article 22-A, and New York common law.

On November 16, 2007, defendants removed the state proceeding to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.

### B.     The Attorney General's Complaint

New York Executive Law § 63(12) authorizes the Attorney General to commence a proceeding in New York state court to enjoin any "repeated fraudulent or illegal acts" or "persistent fraud or illegality' in the conduct of business, and to seek restitution and damages on behalf of injured consumers. New York General Business Law § 349 prohibits "[d]eceptive acts and practices" in the conduct of business and authorizes the Attorney General to bring suit to enjoin such acts and obtain restitution on behalf of aggrieved consumers.

The Attorney General here asserts claims under these New York consumer protection statutes and the New York common law of unjust enrichment based on allegations that defendants engaged in fraudulent, deceptive, and illegal business practices in connection with conducting residential real estate appraisals for their client Washington Mutual ("WaMu"). The complaint seeks an injunction restraining defendants from engaging in the fraudulent, deceptive, and illegal practices alleged, and also seeks restitution, disgorgement, and damages for injured consumers, and statutory penalties and costs.

The complaint details a course of conduct whereby defendants agreed, in doing business with WaMu, to use a panel of real estate appraisers selected by the loan origination staff of that client because those appraisers historically delivered the property values WaMu needed to close loans. By doing this, defendants violated established rules of appraiser independence designed to ensure that real estate appraisals are fair, objective, and untainted by parties' financial or other incentives to consummate loan transactions.

More specifically, defendants publicly claimed to provide their customers with "third-party, unbiased valuations" that complied with rules set forth in the Uniform Standards of Professional Appraisal Practice ("USPAP"),[1] Compl. ¶¶ 7, 23, which both state and federal law incorporate by reference.  In reality, however, defendants repeatedly violated those rules by agreeing to use a "Proven Appraiser List" composed of appraisers hand-picked by WaMu's loan origination staff based on their past history of providing the valuations WaMu desired. Compl. ¶¶ 37-38. Defendants also permitted WaMu's staff to remove from the "Proven Appraiser List" appraisers who later failed

---

[1]USPAP are developed by the Appraisal Standards Board appointed by Board of Trustees of The Appraisal Foundation, a private not-for-profit educational organization.

to deliver the valuations WaMu wanted or accede to WaMu's demands that valuations be "reconsider[ed]." See Compl. ¶¶ 70-83.

Moreover, when defendants agreed to use the "Proven Appraiser List," they were well aware that the "proven appraisers" had been selected by WaMu specifically because they "br[ought] in the values" that WaMu's loan officers desired. Compl. ¶ 46. Defendants further knew that agreeing to assign only WaMu's selected "proven appraisers" violated USPAP standards and compromised eAppraiseIT's independence. Compl. ¶¶ 46-48, 50. Nevertheless, defendants "agreed to roll over and just do it." Compl. ¶ 41.

The complaint alleges that this course of conduct constituted "fraudulent," "deceptive," and "illegal" business practices within the meaning of Executive Law § 63(12) and General Business Law § 349. Compl. ¶¶ 91-92. As predicates for the assertion of "illegality," the Attorney General relies on New York statutes and regulations mandating appraiser independence and requiring appraisers to conduct themselves honestly and independently. See Executive Law § 160 et seq.; 19 N.Y.C.R.R. § 1106.1. New York licenses and certifies real estate appraisers for transactions involving New York properties. See 9 NYCRR sbpt. 188-5; 19 N.Y.C.R.R. pt. 1101. New York law prohibits appraisers from accepting assignments or performing appraisals contingent upon hitting target property values. Executive Law § 160-y. New York law further requires that real estate appraisals be "conducted and communicated in accordance" with USPAP standards. 19 N.Y.C.R.R. § 1106.1(a). USPAP rules in turn require above all that "an appraiser must perform assignments with impartiality, objectivity, and independence . . . ." USPAP Ethics Rule (Conduct), available at http://commerce.appraisalfoundation.org/html/2006%20USPAP/ethics_rule.htm. The complaint alleges that defendants' course of conduct violated these New York laws. See Compl. ¶¶ 18, 21.

-4-

The complaint also cites federal law as an additional basis of predicate violations supporting liability under Executive Law § 63(12) and General Business Law § 349. See Compl. ¶¶ 18-20. Federal laws addressing appraisal standards for federally related transactions essentially mirror the New York laws discussed above. In fact, federal statutes and regulations expressly rely on state law to govern the licensing and certification of real estate appraisers used in federally related transactions. See, e.g., 12 U.S.C. § 3348(a)(1); 12 C.F.R. § 564.4(e). Additionally, federal law, like New York law, specifies that appraisals in such transactions must comply with USPAP standards, 12 C.F.R. § 564.4(a), and requires that appraisers have "no direct or indirect interest, financial or otherwise, in the property or the transaction" at issue, 12 C.F.R. § 564.5.

## ARGUMENT

### THIS CASE SHOULD BE REMANDED TO NEW YORK STATE COURT BECAUSE THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE STATE-LAW CLAIMS ALLEGED IN THE COMPLAINT

"Removal statutes are construed narrowly and all uncertainties are resolved in favor of remand in order to promote the goals of federalism, restrict federal court jurisdiction, and support the plaintiff's right to choose the forum." Rubin v. MasterCard Int'l, LLC, 342 F. Supp. 2d 217, 218 (S.D.N.Y. 2004) (internal quotation marks omitted). Under 28 U.S.C. § 1441(a), a lawsuit filed in state court may be removed to federal court only if the case falls within the federal courts' original subject matter jurisdiction. Because such federal jurisdiction is lacking over the State's claims here, this Court should remand this case to New York state court.

Defendants carry the burden to establish a valid basis for federal jurisdiction, Rubin, 342 F. Supp. 2d at 219, and in doing so must overcome a "strong presumption" against removal, State of California v. H & R Block, Inc., No. C 06-2058 SC, 2006 U.S. Dist. LEXIS 69472, at *5 (N.D. Cal.

Sept. 18, 2006). The bar is further heightened when, as in this case, "the removal in question is of an action brought originally by a State in a State Court." Id. at *5. This is because "considerations of comity make [federal courts] reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 21 n.22 (1983).

Defendants assert that this Court has subject matter jurisdiction under 28 U.S.C. § 1331 (Notice of Removal at ¶ 2), which vests the federal district courts with original jurisdiction over "all civil actions arising under the . . . laws . . . of the United States."[2] Under familiar doctrine, the § 1331 inquiry is governed by the "well-pleaded complaint" rule, which mandates that "a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law." Franchise Tax Bd., 463 U.S. at 10. The analysis focuses solely on the plaintiff's affirmative claim; potential defenses that may be based on federal law are not considered. For removal to be proper, therefore, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." Gully v. First Nat'l Bank in Meridian, 299 U.S. 109, 112 (1936).

Conversely, "a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." Franchise Tax Bd., 463 U.S. at 14 (emphasis added). Given this rule, federal preemption defenses are commonly decided by the state courts. See, e.g., Rosario v. Diagonal Realty, LLC, 8 N.Y.3d 755,

---

[2] First American does not attempt to invoke diversity jurisdiction, presumably because it is settled that a State is not a "citizen" within the meaning of 28 U.S.C. § 1332. See e.g., Illinois v. City of Milwaukee, 406 U.S. 91, 97 n.1 (1972); Ohio v. Wyandotte Chems. Corp., 401 U.S. 493, 498 n.3 (1971).

-6-

763-64 (2007), petition for cert. filed, 76 U.S.L.W. 3189 (U.S. Oct. 8, 2007) (No.07-446); Matter

of Council of City of N.Y. v. Bloomberg, 6 N.Y.3d 380, 395 (2006); Dalton v. Pataki, 5 N.Y.3d 243,

259 (2005). Accordingly, defendants' contention in this case (Defs.' Mem. of Law. in Supp. of Mot.

to Dismiss at 12, 15-16) that doctrines of "defensive preemption" defeat the State's claims (which

is incorrect in any event) is irrelevant to the question whether remand is required.[3] Rather, the

existence of federal "arising under" jurisdiction must be judged exclusively by reference to the

affirmative elements of the State's claims.

     In the "vast majority of cases" that are subject to federal "arising under" jurisdiction, federal

law is "the law that creates the [plaintiff's] cause of action." Franchise Tax Bd., 463 U.S. at 8-9

(internal quotation marks omitted). This is so, for instance, when a plaintiff sues under 42 U.S.C.

§ 1983. See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005)

(citing this example). Here, by contrast, the State asserts causes of action created by New York

statutory and common law, not federal law. Defendants evidently recognize this, but contend

(Notice of Removal, at 2-3) that this action falls within the "special and small category" of claims

which, although created by state law, are deemed nevertheless to "arise under" federal law for

jurisdictional purposes because "the plaintiff's right to relief necessarily depends on resolution of

---

[3] In exceedingly narrow circumstances not applicable here, the Supreme Court has held that a sweeping express preemption clause, coupled with a statutory prescription of an exclusive federal cause of action, can have jurisdictional consequences. See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1 (2003) (National Bank Act §§ 85 and 86); Metro. Life Ins. Co. v. Taylor, 481 U.S. 58 (1987) (ERISA § 502(a)); Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557 (1968) (Labor Management Relations Act § 301). Under those three federal statutes, all claims within the scope of the exclusive federal right of action are deemed to be federal claims in substance, even if the claims are artfully pleaded in state-law terms. This doctrine of "complete preemption" has no application to this case because there is no exclusive federal cause of action covering the State's allegations here, as there was in the above cases.

a substantial question of federal law." Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. __, 126 S. Ct. 2121, 2131 (2006) (internal quotation marks omitted).

This case, however, is not one of the rare actions that belongs to this "slim" class. Id. at 2137. The Supreme Court has made clear that the "mere need to apply federal law in a state-law claim will [not] suffice to open the 'arising under' door." Grable, 545 U.S. at 313. Rather, three narrowly drawn conditions must be satisfied for a claim created by state law nevertheless to give rise to federal question jurisdiction. First, the "state-law claim [must] necessarily raise a stated federal issue." Id. at 314. Second, that federal issue must be "actually disputed and substantial." Id. Third, the federal question must be one that "a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. No prong of this test is met here.

## A.    No Question of Federal Law Is a Necessary Element of the State's Claims For Relief.

The state-law claims asserted in the complaint, properly assessed based on the affirmative elements pleaded and without reference to potential defenses to liability, do not necessarily raise any federal question. To the contrary, it is possible for the State to establish the affirmative elements of each of its claims based solely on New York laws. Federal laws may provide an additional basis for finding predicate legal violations supporting liability under New York's consumer protection statutes, but reliance on those laws is not essential for the State to establish the elements of any claim it alleges.

This case therefore stands in stark contrast to Grable, which the Supreme Court has held "exemplifies" the rare circumstances under which a state-law claim will be deemed to "arise under" federal law. Empire Healthchoice, 126 S. Ct. at 2137. In Grable, a federal issue was unquestionably

-8-

essential to the plaintiff's state-law claim.  The plaintiff there brought a quiet title action under state law seeking the return of property that had been seized by the IRS and sold to satisfy a federal tax deficiency.  See Grable, 545 U.S. at 310.  The sole basis for plaintiff's claim was that the IRS had failed to notify him of the seizure "in the exact manner required by" 26 U.S.C. § 6335(a), which he claimed required personal service, rather than service by certified mail, as the IRS had provided.  Id. at 311.  That federal question was "an essential element" of plaintiff's state-law claim; indeed, the Court observed that it "appeared to be the only legal or factual issue contested in the case."  Id. at 315.

As Grable demonstrates, and other decisions have also recognized, a state-law claim "necessarily" requires resolution of a federal question only if the plaintiff's theory of liability inescapably hinges on an issue of federal law.  See Broder v. Cablevision Sys. Corp., 418 F.3d 187, 194 (2d Cir. 2005); cf. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 807-10 (1988).  In other words, federal jurisdiction does not exist "[w]here a federal issue is present as only one of multiple theories that could support a particular [state-law] claim."  Broder, 418 F.3d at 194 (emphasis added).  This case fits precisely that description.  Here, federal law is implicated, at most, in only one of several theories of liability pleaded as to any particular state-law claim.  For example, the State's claim under Executive Law § 63(12) alleges that defendants committed "repeated fraud and illegality" within the meaning of that state statute through a course of conduct whereby they compromised their independence as appraisers, while making public statements touting that independence.  This course of conduct involved both "fraud" under New York law and "illegality" under New York standards of appraiser independence. The mere fact that the State alleges that the same course of conduct also violated parallel federal standards of appraiser independence does not make federal law necessary or essential to the State's Executive Law § 63(12) claim.  The same

analysis holds true for the State's claims under General Business Law § 349 and New York common law.

Applying these very principles, a district judge in the Northern District of New York recently remanded a case brought by the Attorney General under Executive Law § 63(12) and General Business Law § 349 for lack of federal jurisdiction, where the complaint alleged violations of federal law as three of ten examples of predicate illegality underlying the § 63(12) claim. See People v. Dell, Inc., No. 1:07-CV-0572, 2007 U.S. Dist. LEXIS 77152, at *4-7 (N.D.N.Y. Oct. 16, 2007). The court determined that the alleged federal violations were "merely alternate theories for [the Attorney General's] state law claims," which were in any event "fully actionable under the state laws asserted." Id. at *7-8.

Similarly, in H&R Block, a California district court remanded a case brought by the California Attorney General under that State's consumer protection statutes based on an alleged pattern of misconduct related to the defendant's sale and marketing of loans made in anticipation of federal income tax refunds. 2006 U.S. Dist. LEXIS 69472, at *2-3. In removing the case, the defendant argued that the case presented a substantial federal question because the California Attorney General's complaint alleged, as one of eight alleged predicate violations supporting liability, that the defendant had violated the federal Truth in Lending Act. Id. at *6. The district court rejected this argument because the federal allegation was not an "essential part" of California's cause of action, but only one of several predicate violations on which the State based its causes of action. Id. at *12. As discussed above, the same is true here.

On the other hand, sharply distinct from this case are the facts of Matter of State of New York v. Citibank, N.A., where the district court found federal jurisdiction over a suit commenced by the New York Attorney General pursuant to Executive Law § 63(12) because federal questions

were "central to the controversy."  See 537 F. Supp. 1192, 1196 (S.D.N.Y. 1982). In Citibank, the petition asserted four causes of action under § 63(12), three of which alleged that the defendant bank's refusal to reimburse customers for unauthorized ATM withdrawals resulting from a particular criminal scheme violated provisions of the federal Electronic Funds Transfer Act ("EFTA"). Only the fourth cause of action, a factually distinct allegation based on the bank's failure to post notices of the existence of the criminal scheme, was based on New York law. The court concluded that federal questions lay at the heart of the case because "[c]onstruction of EFTA [was] necessary to resolution of the [Attorney General's] claims." Id. at 1137. Here, by contrast, all of the elements of the State's state-law claims may be established without reference to federal law.  Because those claims therefore do not necessarily present questions of federal law, federal "arising under" jurisdiction does not exist.


**B.      Any Federal Question Implicated Here Is Not Substantial.**

Even if the State's claims necessarily presented a question of federal law (which they do not), federal jurisdiction would nevertheless be lacking because any federal issue here is not "a substantial one," meaning one that "indicat[es] a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Grable, 545 U.S. at 313.  Grable is again the paradigm case.  As discussed above, in Grable the plaintiff's quiet title action turned entirely on the construction of the federal statute governing the manner by which the IRS must provide notice to a property owner when it seizes property and sells it to satisfy a federal tax deficiency.  Grable thus presented a "nearly pure issue" of federal statutory law, one "that could be settled once and for all and thereafter would govern numerous tax sale cases." Empire Healthchoice, 126 S. Ct. at 2137 (quoting Hart and Wechsler's The Federal Courts and the Federal System 65 (2005 Supp.)).

Moreover, "the dispute centered on the action of a federal agency (IRS) and its compatibility with a federal statute." Id. The case thus implicated the federal government's "direct interest in the availability of a federal forum to vindicate its own administrative action," as well as its "strong interest" in prompt and certain collection of delinquent federal taxes. Grable, 545 U.S. at 315.

The circumstances of this case do not present any comparably strong federal interest in a federal forum. No federal administrative action is under challenge. Nor is federal revenue collection or any similarly weighty federal concern at issue. Indeed, Congress and the Office of Thrift Supervision ("OTS") have expressly left to the States the authority to license, and thus necessarily to oversee and discipline, appraisers used in federally related real-estate transactions. See 12 U.S.C. §§ 3332, 3336, 3338, 3342, 3345-48, 3350-51; 12 C.F.R. pt. 564 (all repeatedly referring to state licensing and certification of appraisers). As a result, disciplinary actions against New York-licensed appraisers used in federally related transactions are heard by the New York Department of State, subject to judicial review in New York state court. See Executive Law §§ 160-u through 160-w. This refutes any claim that there is a pressing need for a federal forum to hear this action raising similar questions of appraiser misconduct.

Furthermore, unlike in Grable, no pure question of federal statutory law of broad potential sweep is implicated by the State's complaint. Rather, there is at most only the "fact-bound and situation-specific" question, Empire Healthchoice, 126 S. Ct. at 2137, of whether the defendants' course of conduct violated federal regulations addressing appraiser independence, which principally incorporate USPAP guidelines, themselves not a source of federal law at all. For all of these reasons, any federal question presented here is insubstantial under the Grable test.

C.     **A Finding of Federal Question Jurisdiction Would Disturb the Balance of Federal and State Judicial Responsibilities.**

Even if a substantial federal question were necessarily presented by the State's claims (which it is not), federal jurisdiction still would not exist because opening a federal forum to all state consumer protection suits like this one would "disturb[] [the] congressionally approved balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314.

As the Supreme Court stated in Grable, "[b]ecause arising-under jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction." Id. In that case, the Court found federal jurisdiction to exist only because it was satisfied that recognizing federal jurisdiction "over actions like [the plaintiff's] would not materially affect, or threaten to affect, the normal currents of litigation." 545 U.S. at 319. This was so because "it is the rare state quiet title case that involves contested issues of federal law." Id.

By contrast, the balance of state and federal judicial responsibilities would be substantially altered if federal jurisdiction existed over the numerous cases like this one – i.e., cases that are brought under state consumer protection statutes and predicated on a course of conduct that violates both state and federal laws. Many States have consumer protection statutes similar to the New York statutes involved here. See, e.g., H&R Block, 2006 U.S. Dist. LEXIS 69472 (addressing California's statutes); Rubin, 342 F. Supp. 2d 217 (addressing Florida's statutes). Such statutes prohibit a "wide spectrum of unscrupulous conduct," id. at 220, that will frequently violate both state and federal laws. Consequently, exercising federal jurisdiction in such cases would open the federal

-13-

courts to the removal of countless suits brought by state attorneys general (and others) under state consumer protection statutes.  See Eastman v. Marine Mech. Corp., 438 F.3d 544, 553 (6th Cir. 2006) (ordering remand of state-law claim alleging wrongful discharge based on federal public policy because providing a federal forum for such claims would result in a dramatic shift in the division of judicial labor); Kantha v. Pac. Life Ins. Co., No. 06-0905, 2006 U.S. Dist. LEXIS 63285, at *7 (D.N.J. Sept. 6, 2006) (same, in suit against insurer and brokerage firm); Stechler v. Sidley Austin Brown & Wood, LLP, No. 05-3485, 2005 U.S. Dist. LEXIS 39213, at * 13-18 (D.N.J. Dec. 14, 2005) (same, in suit alleging professional malpractice based on incorrect federal income tax advice).  For this reason, too, federal jurisdiction should be found not to exist here.

## CONCLUSION

For the foregoing reasons, there is no federal subject matter jurisdiction over this action, and the case therefore should be remanded to New York State Supreme Court, New York County.

Dated: New York, New York
      December 3, 2007

                              Respectfully submitted,

                              ANDREW M. CUOMO
                              Attorney General of the State of New York
                              Attorney for Plaintiff

            By:       /s/ Nicole Gueron
                              NICOLE GUERON (NG-7682)
                              Deputy Chief Trial Counsel
                              120 Broadway, 25th Floor
                              New York, New York  10271
                              Tel: (212) 416-6053
                              Nicole.Gueron@oag.state.ny.us

Of Counsel:
Richard Dearing
Christopher Mulvihill
Assistant Attorney Generals