UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK by ANDREW M. CUOMO, Attorney General of the State of New York, | **ECF Case** |
| | Civ. Action No.: 07-10397 (LTS) (HP) |
| Plaintiff, | |
| *against,* | |
| FIRST AMERICAN CORPORATION and FIRST AMERICAN EAPPRAISEIT, | |
| Defendants. | |

**MEMORANDUM OF LAW OF DEFENDANTS
FIRST AMERICAN CORPORATION AND
EAPPRAISEIT IN
OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

THACHER PROFFITT & WOOD LLP
Richard F. Hans
Patrick J. Smith
Kerry Ford Cunningham
Two World Financial Center
New York, New York 10281
Tel.: (212) 912-7400

*Attorneys for The First American
Corporation and eAppraiseIT, LLC*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................2

BACKGROUND: The Attorney General's Allegations...................................3

ARGUMENT ..............................................................................................4

A.   STATE LAW CLAIMS THAT REQUIRE RESOLUTION OF A SUBSTANTIAL FEDERAL
     QUESTION MAY BE REMOVED TO FEDERAL COURT ..................................5

B.   WHETHER OR NOT FEDERAL APPRAISER INDEPENDENCE STANDARDS WERE
     VIOLATED IS THE CENTRAL QUESTION IN THIS CASE. ..............................9

C.   THE FEDERAL QUESTION OF APPRAISER INDEPENDENCE IS SUBSTANTIAL AND
     DISPUTED...........................................................................................13

     1.   *There Is a Dispute Over the Meaning of Appraiser Independence in the
          Context of the WaMu/eAppraiseIT Relationship* .....................................13

     2.   *The Exclusively Federal Character of the Appraiser Independence
          Question at Issue Reinforces That It Is "Substantial" Under Grable* .......16

D.   THE STRONG FEDERAL INTEREST IN UNIFORM RULES IN THE AREA OF FEDERAL
     THRIFT MORTGAGE ORIGINATION OUTWEIGHS ANY COMITY CONCERNS..............18

CONCLUSION...........................................................................................19

## TABLE OF AUTHORITIES

### Federal Cases

*Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257 (1916) ..................................... 5

*Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005)........................ 5, 8, 18

*Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164 (1997) ............................................ 6

*D'Alessio v. New York Stock Exchg.*, 258 F.3d 93 (2d Cir. 2001) ....................................... 6

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005)................................... 5

*Franchise Tax Bd. v. Constr. Laborers Vacation Bd.*, 463 U.S. 1, 10-11 (1983)... 5, 6, 7, 8

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) ............. passim

*In re Zyprexa Prod. Liab. Litig.*, 375 F. Supp. 2d 170 (E.D.N.Y. 2005)........................... 9

*Municipality of San Juan v. Corporación para el Fomento Económico de la
     Cuidad Capital*, 415 F.3d 145 (1st Cir. 2005) ......................................................... 9

*Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986)........................................ 5, 6

*Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227 (10th Cir. 2006) ..................................... 9

*Shulthis v. McDougal*, 225 U.S. 561, 569 (1912) .............................................................. 6

*Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 201 (1921) .................................... 5

*Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers*, 159 F.3d 1209 (9th Cir.
     1998) .......................................................................................................................... 6

*State of New York v. Citibank, N.A.*, 537 F. Supp. 1192 (S.D.N.Y. 1982) ....................... 9

*W. 14th St. Commercial Corp. v. 5 W. 14th St. Owners Corp.*, 815 F.2d 188 (2d
     Cir. 1987) ................................................................................................................... 6

*West Virginia v. Eli Lilly & Co.*, 476 F. Supp. 2d 230 (E.D.N.Y. 2007)........................... 8

### Federal Statutes

12 U.S.C. § 1461 .......................................................................................................... 11, 16

12 U.S.C. § 3301 .......................................................................................................... 11, 16

28 U.S.C. § 1331 .............................................................................................................. 4, 5

28 U.S.C. § 1441(a) ..................................................................................................... 3, 5, 19

47 U.S.C. § 543(d) ............................................................................................................... 8

### State Statutes

New York Executive Law § 63(12) .................................................................................. 3, 9

New York Executive Law § 160 *et seq* ............................................................................... 4

New York Executive Law § 160-u .................................................................................... 12

New York Executive Law § 160-y ................................................................ 12

New York General Business Law § 349 .................................................. 3, 8, 18

### Federal Regulations

12 C.F.R. § 560 ........................................................................... 11, 13

12 C.F.R. § 560.2(a) ........................................................................... 17

12 C.F.R. § 564 ........................................................................... 11, 13

12 C.F.R. § 564.5 ........................................................................... 11, 14

12 C.F.R. § 565.5(a) ........................................................................... 14, 15

### State Regulations

9 N.Y.C.R.R. sbpt. 188-5 ........................................................................... 4

19 N.Y.C.R.R. § 1101 ........................................................................... 4

19 N.Y.C.R.R. § 1106.1 ........................................................................... 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK by
ANDREW M. CUOMO, Attorney General of the State of
New York,

                                 Plaintiff,

                              *against,*

FIRST AMERICAN CORPORATION and FIRST
AMERICAN EAPPRAISEIT,

                                Defendants.

Civ. Action No.: 07-10397 (LTS) (HP)

## MEMORANDUM OF LAW OF DEFENDANTS
## FIRST AMERICAN CORPORATION AND
## EAPPRAISEIT IN
## OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

      Defendants The First American Corporation and eAppraiseIT LLC, by and
through their attorneys, Thacher Proffitt & Wood LLP, respectfully submit this
memorandum of law in opposition to the Attorney General of the State of New York's
motion to remand this action to the Supreme Court of the State of New York.

## PRELIMINARY STATEMENT

The Attorney General cannot succeed on any of his claims unless he can demonstrate that the scheme alleged in the Complaint compromised appraiser independence. The propriety of the methods employed to compose the panel from which appraisers were selected to conduct individual Washington Mutual appraisals is at the core of this dispute. Resolution of this central issue will necessarily turn on the construction and application of federal law. The Attorney General, in his own complaint, admits this: "Federal law sets independence standards for appraisers in federally-regulated transactions." (Comp. ¶ 19). While there should thus be no dispute on which law controls, there is a substantial dispute as to what federal law requires as applied to the practices at issue here.

In his effort to thwart removal, however, the Attorney General appears to have forgotten that he brought an action that so heavily and explicitly relies on controlling federal statute and regulation. Instead, he argues that New York law governing the licensing of appraisers is the basis for his action. One need only skim the Attorney General's complaint to see that a purported violation of federal law, outlined via extensive citations and block quotes, is the true basis for his claims. As to federally regulated mortgage loan transactions, the Attorney General cannot complain that appraiser independence was compromised and expect to rely on state law. In this context, federal law and regulation are exclusive.

The Attorney General's admission that federal law controls renders his claims about reliance on various state law provisions governing appraiser conduct irrelevant. Perhaps these provisions might be applicable were we faced with a case not involving

2

federally regulated entities. But we are not. Washington Mutual is alleged to be the nation's largest *federally chartered* thrift. eAppraiseIT is an "institution-affiliated" party, as are the fee appraisers whose independence was allegedly compromised, and thus subject to the federal guidelines which the Attorney General expressly claims have been violated.

There is a strong and compelling federal interest in the exercise of federal jurisdiction in this case. Following the savings and loan debacle of the late 1980s, Congress reworked the entire regulatory oversight scheme for the thrift industry, specifically federalizing appraiser standards. Few industries are as comprehensively subject to federal regulation as the federal savings and loan industry. National players in this closely regulated industry are entitled to have a federal court interpret federal law so that a single, national uniform standard prevails. This federal interest in uniformity in the federal savings and loan industry overrides any comity-based concerns that removal of this action might have raised.

As we further demonstrate below, this Court has subject-matter jurisdiction over this case and removal pursuant to 28 U.S.C. § 1441(a) was proper. The Attorney General's motion to remand should be denied.

## BACKGROUND: THE ATTORNEY GENERAL'S ALLEGATIONS

The Attorney General asserts his claims under New York Executive Law § 63(12) and New York General Business Law § 349, alleging that First American and eAppraiseIT engaged in fraudulent, deceptive, and illegal business practices in connection with conducting residential real estate appraisals for their client, Washington Mutual. The Attorney General argues that the predicate illegal business practices were in

violation of Executive Law § 160 *et seq.*; 19 N.Y.C.R.R. §§ 1101 and 1106.1; and 9 N.Y.C.R.R. sbpt. 188-5, which collectively regulate appraiser conduct in New York. (Comp. ¶ 21; Pl. Remand Mot., at 4).

The Attorney General alleges that First American and eAppraiseIT violated established rules of appraiser independence when they agreed to use a panel of selected appraisers, the composition of which was controlled by Washington Mutual's loan origination staff.    (Comp. ¶8).    Specifically, the Attorney General alleges that Washington Mutual's loan origination staff hand-picked the appraisers on the panel based on the appraisers' history of providing the valuations Washington Mutual desired (Comp. ¶¶ 37-38) and the appraisers' continued accession to Washington Mutual's demands for particular values.  (Comp. ¶¶ 70-83).  In complying with Washington Mutual's demands to use the panel and permitting the loan origination staff to remove appraisers if their values were "below target," First American and eAppraiseIT allegedly compromised appraiser independence by enabling Washington Mutual to exert direct and indirect pressure on the appraisers.  (Comp. ¶¶ 60-62).

## ARGUMENT

### THIS CASE WAS PROPERLY REMOVED TO FEDERAL COURT

An action that turns on a substantial and disputed question of federal law in an area with a strong federal interest in the exercise of jurisdiction may be removed to federal court because the presence of such a question satisfies the "arising under" requirement of Title 28, United States Code, Section 1331.  This is true even in the absence of a federal claim.  The Attorney General seeks in this action to enforce what he believes to be a violation of the federal law concerning the selection of appraisers who conducted appraisals for Washington Mutual mortgage loan originations.  The defendants

contend that the Attorney General has misread what federal law provides and that their conduct at all times complied with the correct federal standard. In addition to the disputed federal question at the center of this action, the overarching federal interest in regulating the federal savings and loan industry in its core function of mortgage loan origination fully supports the exercise of federal jurisdiction.

**A.    STATE LAW CLAIMS THAT REQUIRE RESOLUTION OF A SUBSTANTIAL FEDERAL QUESTION MAY BE REMOVED TO FEDERAL COURT**

Title 28, United States Code, Section 1331, provides "[t]hat the district courts shall have jurisdiction of all civil actions arising under the constitution, laws or treaties of the United States." Under the federal removal statute, 28 U.S.C. § 1441(a), such "arising under" federal question claims may be removed provided they could have been brought in federal court originally. *See Franchise Tax Bd. v. Construction Laborers Vacation Bd.*, 463 U.S. 1, 7-8 (1983); *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257 (1916). A single claim over which federal question jurisdiction exists is sufficient to allow removal. *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005)).

Since early in the 20th century, removal has also been proper where a state law claim requires the consideration and resolution of a substantial question of federal law. *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199 (1921); *Franchise Tax Bd.*, 463 U.S. at 9. While the contours of this avenue of federal question removal have since shifted somewhat, *see Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986) (restricting exercise of jurisdiction in circumstances where violation of a federal statute was a distinct element of a state tort claim and federal right of action existed), the principle has remained sound and courts have consistently invoked the "substantial

question of federal law" test to sustain the exercise of federal jurisdiction over removed cases that could not have been first filed as federal cases.  *D'Alessio v. New York Stock Exchg.*, 258 F.3d 93 (2d Cir. 2001) (finding federal jurisdiction where the gravamen of the state tort and breach of contract claims was that the NYSE conspired to violate the federal securities laws and failed to perform its federal statutory duty);  *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers*, 159 F.3d 1209 (9th Cir. 1998) (holding federal jurisdiction proper where state common law claims sought relief based on violation of the Exchange Act); *see also W. 14th St. Commercial Corp. v. 5 W. 14th St. Owners Corp.*, 815 F.2d 188 (2d Cir. 1987) (finding federal question jurisdiction in action to enjoin defendant from terminating leases because the parties' rights and relationships were created by federal law).

To invoke this basis for removal, the federal law at issue must be subject to a "controversy respecting [its] validity, construction or effect."  *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005) (*citing Shulthis v. McDougal*, 225 U.S. 561, 569 (1912)).  In addition, the justification for the exercise of federal jurisdiction is the presence of "a serious federal interest in claiming the advantages thought to be inherent in a federal forum."  *Id.* at 313 (citing *Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164 (1997); *Merrell Dow*, 478 U.S. at 814, and n. 12; *Franchise Tax Bd.*, 463 U.S. at 28).

In *Grable,* the Supreme Court reinvigorated *Smith* and explained this class of federal question removal cases, confirming that "federal question jurisdiction will lie over state-law claims that implicate federal issues" even in the absence of a direct federal claim:

6

> The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude and hope of uniformity that a federal forum offers on federal issues.

*Id.* at 312. The absence of a federal cause of action, therefore, does not preclude federal question jurisdiction. *Id.* at 316-317. To rule otherwise would unreasonably convert "a federal cause of action from a sufficient condition for federal question jurisdiction into a necessary one." *Id.* at 317. *Grable* also underscored the nature of the federal interest in the analysis leading to the exercise of federal jurisdiction. *Id.* at 313-314. *Grable* involved a state quiet title action that turned on the adequacy of notice given under a federal tax provision. *Id.* at 310. The importance of the federal interest in having a federal forum for the adjudication of disputes that turn on the construction of a federal tax statute was a key factor weighing in favor of the exercise of federal jurisdiction. *Id.* at 315.

*Grable* made clear that there is no rigid test or easy classification of cases that qualify for removal under the "substantial federal question" doctrine:

> These considerations have kept us from stating a "single, precise, all-embracing" test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties. . . . We have not kept them out simply because they appeared in state raiment, . . . but neither have we treated "federal issue" as a password opening federal courts to any state action embracing a point of federal law. Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.

*Id.* at 314 (citations omitted).

Courts have consistently applied this principle to permit the removal of actions in the absence of federal claims where the federal question is central to the dispute and the

federal interest in the exercise of jurisdiction prevails over the concern that the balance of federal and state power might be disrupted.    Shortly after *Grable*, the Second Circuit decided *Broder v. Cablevision Systems Corp.*, a putative class action against Cablevision, asserting state law claims under Section 349 of New York's General Business Law, breach of contract, fraud, and unjust enrichment, all springing from the cable provider's purported failure to offer uniform rates throughout a geographic area. *See Broder*, 418 F.3d at 191-93.    The Court found removal proper because the question of whether Cablevision's rate structure violated the federal uniform rate statute was central to the dispute and the state law claims.  *Id.*[1]  The Court further found that it would be unlikely that additional GBL § 349 claims would be brought since no private right of action to enforce that federal law existed and thus removal would not disturb any congressionally approved balance of federal and state judicial responsibilities. *Id.* at 196.

Courts find that the stronger the federal interest, the more appropriate the exercise of federal jurisdiction because of the reduced likelihood that the division of federal and state jurisdictional responsibilities will be disrupted.  *See Grable*, 454 U.S. at 314-315. Removal jurisdiction was thus proper in cases involving federal questions rooted in comprehensive federal regulatory schemes such as the federal Medicaid program, *see West Virginia v. Eli Lilly & Co.*, 476 F. Supp. 2d 230, 234 (E.D.N.Y. 2007) ("At issue here is not simply a federal standard, but also the added factor of an intricate regulatory scheme including detailed federal funding provisions, requiring some degree of national uniformity in interpretation."); the Federal Food, Drug, and Cosmetic Act, *see In re*

---

[1] Broder's breach of contract claim alleged that Cablevision's conduct breached a provision of federal law, 47 U.S.C. § 543(d), governing uniform rate structures, which had been incorporated by reference into the contract. 418 F.3d at 194.

*Zyprexa Prod. Liab. Litig.*, 375 F. Supp. 2d 170 (E.D.N.Y. 2005) (substantial federal funding provisions involved and the allegations about the violation of federal law through improper off-label use presented core of substantial issues more federally oriented than those in *Merrell Dow*); the Department of Housing and Urban Development's regulations governing recipients of federal block grant funds, *see Municipality of San Juan v. Corporación para el Fomento Económico de la Cuidad Capital*, 415 F.3d 145 (1st Cir. 2005) (finding jurisdiction over a breach of contract claim where breach depended on construction of federal law in context of detailed regulatory framework); the Electronic Fund Transfers Act, *see State of New York v. Citibank, N.A.*, 537 F. Supp. 1192 (S.D.N.Y. 1982) (holding that federal jurisdiction was proper where the Attorney General's complaint alleged violations of federal law and violations of Executive Law 63(12) caused by the same alleged violations of federal law); and federal land grant statutes, *see Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227 (10th Cir. 2006) (taking jurisdiction over claims of trespass, tortious interference and slander where construction of the grant was necessary to determine the propriety of the defendant's conduct).

The exercise of federal question jurisdiction following removal is uncontroversial where, as here, the state law claims put the "construction, effect and validity" of federal law at the center of the dispute, and where the federal law at issue implicates important federal interests.

**B.    WHETHER OR NOT FEDERAL APPRAISER INDEPENDENCE STANDARDS WERE VIOLATED IS THE CENTRAL QUESTION IN THIS CASE.**

The heart of this case is the Attorney General's allegation that the defendants compromised their independence when they allegedly "abdicated their role" in providing

"unbiased valuations" to Washington Mutual. (Comp. ¶ 8).    The Attorney General summarizes his theory of the illegality of the conduct in paragraph 8 of the Complaint:

> eAppraiseIT improperly allows WaMu's loan production staff to hand-pick appraisers who bring in appraisal values high enough to permit WaMu's loans to close, and improperly permits WaMu to pressure eAppraiseIT appraisers to change appraisal values that are too low to permit loans to close.  eAppraiseIT compromises its <u>independence</u> even while publicly touting that <u>independence</u>, and despite myriad warnings from its senior management team about the illegal collusion inherent in the compromises it is making.  Instead of preserving its <u>independence</u> . . . eAppraiseIT chose only to protect itself.  And senior executives at First American, though warned by eAppraiseIT's senior management of its compromised <u>independence</u>, nonetheless directed eAppraiseIT to continue its wrongful conduct. (emphasis added).

The multiple underscored references to appraiser "independence" show what this case is about.  Recognizing that federal law controls the standard by which appraiser independence is evaluated, the Attorney General alleges in the Complaint that "Federal law sets independence standards for appraisers in federally-regulated transactions." (Comp. ¶ 19).    The Complaint then quotes federal regulatory guidance on appraiser independence in the context of proper appraiser selection processes, (Comp. ¶ 20) – leaving no doubt that the Attorney General understands that it was in connection with federally regulated transactions that eAppraiseIT provided appraisal management services to Washington Mutual.  The balance of the Complaint consists mainly of the evidentiary detail on the purported defects in the Washington Mutual/eAppraiseIT selection methodology and how that amounts to a violation of federal independence standards.

That federal law controls mortgage loans originated by federally chartered thrifts generally, and appraiser independence standards in particular, is a straightforward proposition.  Federal law provides the rule of decision here because the OTS, exercising

authority conferred on it by the Federal Home Owners Loan Act, 12 U.S.C. § 1461 *et seq.* ("HOLA") and the Financial Institutions Reform, Recovery and Enforcement Act, 12 U.S.C. § 3301 *et seq.* ("FIRREA"), has promulgated regulations that occupy the field of mortgage loan origination by federally chartered savings and loans. Specific OTS regulations govern every aspect of mortgage loan origination, including appraisals. 12 CFR §§ 560, 564. Federal law also specifically sets independence standards. 12 CFR § 564.5. Federal bank regulatory agencies, including OTS, have issued detailed guidance on appraisal practices.

Against the backdrop of the Attorney General's admission that federal law controls the central issue in the case, he now contends that his reference to federal law and regulations in the Complaint was purely incidental and that such reference was not necessary to an adjudication of his claims under State law. In support of this disingenuous claim, the Attorney General cites various state laws and regulations that speak to the licensing and professional standards of individual appraisers. (Comp. ¶ 21; Pl. Remand Mot., at 4). One is hard pressed, however, to find an allegation in the Complaint regarding the professional conduct of a single appraiser that might implicate any specific or general requirement of any of state regulations that the Attorney General now cites. Those laws and regulations do not speak to, much less control, the "independence" issues at the center of the controversy.

It is a measure of the Attorney General's own apparent lack of faith in the applicability of these Executive Law provisions that he does not cite to a particular provision until page 12 of his 14-page memorandum, and even then only in a brief paragraph which suggests the laws' application to the disciplining of individual

11

appraisers. (Pl. Remand Mot., at 12). The Attorney General's reference to these New York State statutes and regulations misses the mark in any event because those authorities are aimed at the licensing and regulation of *individual* appraisers and do not, by any construction, regulate or govern the composition of a thrift's appraisal panel. Executive Law § 160-u, for example, involves the State's right to revoke the license of appraisers holding state licenses or certification. *See* N.Y. EXEC. LAW § 160-u (McKinney 2007). Nobody is disputing the State's right to license appraisers; it just has no bearing on the substantive, federal rules governing appraiser independence on federally regulated transactions.

The State's rules also forbid contingency fees based upon reporting a predetermined estimate. *See* N.Y. EXEC. LAW § 160-y (McKinney 2007). While that specific statute is relied upon by the Attorney General as independent state law underpinning his claim (Pl. Remand Mot., at 4), it is noteworthy that no such "contingency fee" claim is made in the Complaint, much less supported, against the defendants here. The Attorney General does not once complain of individual appraiser conduct, seek to discipline any appraiser or even allege the unjustified inflation of any one appraisal.

In an attempt to pry this case out of the controlling *Grable* framework, the Attorney General broadly argues that "it is possible for the State to establish the affirmative elements of each of its claims based solely on New York laws." (Pl. Remand Mot., at 8). This flimsy argument should be swiftly rejected. Perhaps the Attorney General believes that the omission of any supporting legal analysis of the "New York laws" in the context of this case is somehow persuasive; or, perhaps, he believes that no

one would ask "how" his claims might be sustained purely by reference to state law. As outlined above, it is obvious from simply reading the state law provisions he cites that they have nothing to do with appraiser panel composition and selection issues of which he complains. These New York state laws are silent on those key issues. The Attorney General's assertion that his state law claims can be proven without reliance on federal law is pure fiction and curiously at odds with paragraph 19 of his Complaint, which plainly admits that federal law controls.

When the Attorney General further argues that "parallel" New York standards of appraiser independence provide a distinct basis for liability under purely state law claims, (Pl. Remand Mot., at 9), he necessarily bumps into controlling federal law. Just as federal law controlled the notice issue in the state law quiet title action in *Grable*, 454 U.S. at 314-315, federal law controls all appraisal issues in a mortgage loan originated by a federally chartered thrift, including the independence standard at issue here. *See, e.g.*, 12 C.F.R. §§ 560 and 564. There simply is no viable "parallel" state law to apply and thus no multiple theories to support the Attorney General's state law claims.

Given the presence of federally regulated players – Washington Mutual and eAppraiseIT, the arena – federal savings and loan mortgage loan originations, and the issue – the independence of appraisers, there is simply no escaping that federal law will determine the key question in this case.

## C.   THE FEDERAL QUESTION OF APPRAISER INDEPENDENCE IS SUBSTANTIAL AND DISPUTED.

### 1.   *There Is a Dispute Over the Meaning of Appraiser Independence In the Context of the WaMu/eAppraiseIT Relationship*

The dispute at the core of the case is about the proper interpretation and application of the federally mandated appraiser independence rules. This dispute

13

therefore is not merely about whether the defendants' conduct violated federal law, but also about the very meaning and reach of that law.  As detailed in the defendants' memorandum in support of its motion to dismiss, the Attorney General's interpretation of the federal regulations concerning and regulating the "independence" of real estate appraisers is erroneous.  (Def. Mem. Mot. to Dismiss, at 22).  The Attorney General contends that there must be an absolute separation between the thrift originating a mortgage loan and "fee appraisers," the third-party appraisers who conducted the appraisals at issue in this case and who, unlike "staff appraisers" are not direct Washington Mutual employees.[2]  eAppraiseIT administered Washington Mutual's appraisal program by managing a panel (or list) of fee appraisers who were in each case selected by eAppraiseIT to appraise a particular property.  The Attorney General contends that federal rules barred Washington Mutual from having input into the composition of that panel, or any interaction with the fee appraisers that eAppraiseIt selected.  (Comp. ¶¶ 8, 9, 19, and 20).

As argued in the defendants' memorandum in support of their motion to dismiss, applicable federal regulations do not require absolute separation of a thrift's lending function and fee appraisers.  OTS regulations covering fee appraisers' independence are limited to the appraiser's financial interest in the transaction; "independence," does not

---

[2] Specifically, in 12 C.F.R. § 564.5, the OTS directly addresses and defines "[a]ppraiser independence" for both staff and fee appraisers.  "Staff appraisers," that is, those who are employed directly by the lending institution, must "be independent of the lending, investment, and collection functions and not involved, except as an appraiser, in the federally related transaction, and have no direct interest, financial or otherwise, in the property." 12 C.F.R. § 564.5(a).  "Fee appraisers," that is, those who are independent contractors employed to conduct appraisals of particular properties on a fee basis, "shall be engaged directly by the regulated institution or its agent, and have no direct or indirect interest, financial or otherwise, in the property or transaction." *Id.* at 565.5(a).

mean, as the Attorney General alleges, lack of interaction with the lending institution and its loan origination staff.  (Def. Mem. Mot. to Dismiss, at 15-20).  The allegations in the complaint concerning Washington Mutual loan production staff input on the composition of the panel of fee appraisers show the Attorney General's misplaced concern. (Comp. ¶ 8).  However, to demonstrate a lack of independence, the Attorney General will have to prove that fee appraisers on the panel who were selected to perform Washington Mutual appraisals in fact had a direct or indirect financial interest in connection with particular transactions. *See* 12 C.F.R. § 565.5(a).

The defendants further dispute the allegations that their conduct undermined the independence of the fee appraisers selected to perform appraisals on Washington Mutual loan originations.  eAppraiseIT used an electronic, blind, round-robin system to select appraisers for individual assignments.  This selection system was random and unbiased. The Attorney General will never be able to show, as he apparently believes, that the entire Washington Mutual Proven Panel was thoroughly stacked with fee appraisers who completely disregarded professional standards in order to earn the next assignment. These sweeping allegations may be appealing as sound bites, but the evidence will not support them.  The full history of eAppraiseIT's relationship with Washington Mutual shows eAppraiseIT's efforts to manage that relationship in compliance with OTS regulations.

In sum, and as set forth in First American's motion to dismiss, First American contends that federal regulations and the subsequently issued Interagency Guidelines do not prohibit Washington Mutual from participating in the appointment of appraisers to the Washington Mutual Proven Panel from which appraisers were selected by

15

eAppraiseIT for particular assignments, because eAppraiseIT, not Washington Mutual, "selects" the appraisers for particular appraisal assignments.    To that extent, the Washington Mutual Proven Panel complies in all respects with applicable law governing the independence of appraisals.  The core of the Attorney General's Complaint will turn on the "construction, effect and validity" of federal law, *see Grable*, 545 U.S. at 313; namely, the correct meaning of the federal appraiser independence standards at issue.

2.      *The Exclusively Federal Character of the Appraiser Independence Question at Issue Reinforces That It Is "Substantial" Under Grable*

The federal savings and loan industry is as thoroughly subject to federal regulation as possible.  In our memorandum in support of the defendants' motion to dismiss, we outlined the legislative and regulatory framework that completely occupies the field of federal savings and loan activity in the area of mortgage loan origination. (*See* Def. Mem. Mot. to Dismiss, at 6-14).    We will not repeat that discussion here; rather, we incorporate it by reference.

Two things are evident from that detailed discussion.  First, through HOLA, 12 U.S.C. § 1461 *et seq.*, Congress established a "significant federal presence," regulating all aspects of the operation of federal savings associations. *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 144 (1982).  Congress clearly envisioned that "federal savings [associations] would be governed by what the [OTS] – not any particular State – deemed to be the 'best practices.'" *de la Cuesta*, 458 U.S. at 161 (citation omitted).  Second, to remedy perceived shortcomings in the federal regulatory scheme that led to the savings and loan scandal of the late 1980s, Congress enacted FIRREA, which, among other things, expanded Federal oversight of savings and loan associations to include review and regulation of appraisal programs. *See* 12 U.S.C. § 3301 *et seq.*

16

Under FIRREA, the exclusive responsibility for examination of the real estate lending and appraisal programs implemented by federally regulated savings and loans falls to the OTS. *Id.*

In view of this comprehensive legislative and regulatory framework – which explicitly supersedes all state law on the subject – it is hard to comprehend how the Attorney General can argue that the federal question here is not substantial. Congress empowered the OTS to occupy the field of savings and loan regulation because of the need for heightened uniform national standards; the OTS exercised that power on the very issue at the heart of this case: appraiser independence. *See* 12 C.F.R. § 560.2(a). National entities like Washington Mutual and First American are entitled to have these issues determined in a federal court, where there will be no risk that political or other pressures of the day will bear on the interpretation and application of federal law.

Rather than explaining how the federal interest in appraiser independence issues could be anything other than substantial given the overarching federal regulatory framework, the Attorney General ignores the obvious and instead points again to the state's residual power to license individual appraisers. (Pl. Remand Mot., at 12). There seems to be little point in debating the viability of administrative disciplinary proceedings against individual appraisers because it is entirely irrelevant to this suit for an injunction and damages.[3] The conduct of Washington Mutual and eAppraiseIT claimed to be illegal in the Complaint are well beyond the residual authority of the state to license individual appraisers, which could not in any event seek to apply substantive rules of conduct other

---

[3] The existence of a viable forum to hear this suit and in which to assert arguments based on federal law is not the issue. The basis for removal under *Grable* is the interest in having a federal court decide important federal issues where the defendant seeks to invoke that jurisdiction. A state administrative tribunal cannot fully safeguard those interests, even if there were jurisdiction.

than the federally mandated rules. A state administrative hearing (even with judicial review) is ill-suited to address and ensure the uniformity of comprehensive federal regulations.

**D.    THE STRONG FEDERAL INTEREST IN UNIFORM RULES IN THE AREA OF FEDERAL THRIFT MORTGAGE ORIGINATION OUTWEIGHS ANY COMITY CONCERNS.**

It is unlikely that the exercise of federal jurisdiction in this case would have any disruptive impact on the division of labor between federal and state courts. *See Broder*, 418 F.3d at 196 (finding that federal jurisdiction would not "materially affect, or threaten to affect, the normal currents of litigation"). The *Grable* Court readily found that state quiet title actions would only rarely involve contested questions of federal law. *See Grable*, 545 U.S. at 319. As the Second Circuit observed in *Broder*, which involved GBL § 349, the same consumer protection statute that the Attorney General seeks to employ in this case:

> We think it is likely to be the rare New York breach-of-contract action or suit under GBL § 349 that seeks to assert a private right of action for violation of a federal law otherwise lacking one. Such suits are particularly unlikely to recur in light of the District Court's and our analysis on the merits of Broder's claims in this case. Thus, as in *Grable,* allowing federal jurisdiction here will not "materially affect, or threaten to affect, the normal currents of litigation."

*Broder*, 418 F.3d at 196.

The exercise of federal jurisdiction in this case will not open the floodgate of consumer protection litigation in federal court because few such claims will turn on a contested issue of federal law. For the reasons articulated in *Broder*, the viability of individual borrower lawsuits alleging violations of federal appraiser independence standards will founder on the absence of a private right of action. The Attorney

General's prediction that a torrent of litigation by individuals asserting consumer protection seems, in this context, overblown.

The Attorney General also argues that federal courts would be faced with "countless" consumer protection suits brought by state attorneys general. (Pl. Remand Mot., at 13-14). To the extent these lawsuits turn on substantial questions of federal law where, as here, a vital federal interest is at stake, they are exactly the types of cases that are removable under *Grable* and over which federal courts should exercise jurisdiction. It is not a coincidence that the cases ordering remand to which the Attorney General cites all lack the distinguishing feature of a substantial federal question arising out of a complex federal regulatory scheme. Given the *Grable* analytical framework, the class of suits eligible for the exercise of federal question jurisdiction would be limited to purported state enforcement and regulatory actions that seek to police alleged violations of the federal law and regulation controlling the thrift industry.

Even if there were a small class of suits that would be removable to federal court, the federal interest in uniformity in a field that is completely under the control of federal law and regulation weighs heavily in favor of exercising federal jurisdiction. In addition to setting uniform high standards of conduct, it is a goal of federal regulation to subject participants in a federal regulated national industry to the same rules from state-to-state. In this case, the defendants are entitled to seek "the experience, solicitude and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.

## CONCLUSION

For the foregoing reasons, the requirements of 28 U.S.C. § 1441(a) are met and removal of the action to federal court was proper. Defendants The First American

19

Corporation and eAppraiseIT, LLC, respectfully submit that the Attorney General's motion to remand this action to New York State Supreme Court should be denied.

Dated: New York, New York
      February 06, 2008

                                      Respectfully submitted,

                                      THACHER PROFFITT & WOOD LLP

                                      By:  /s/ Richard F. Hans_____
                                            Richard F. Hans
                                            Patrick J. Smith
                                          Kerry Ford Cunningham

                                      Two World Financial Center
                                      New York, New York 10281
                                      Tel.: (212) 912-7400
                                      rhans@tpw.com
                                      psmith@tpw.com
                                      kcunningham@tpw.com

                                      *Attorneys for The First American*
                                      *Corporation and eAppraiseIT, LLC*