UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK by ANDREW M. CUOMO, Attorney General of the State of New York,<br><br>                                                     Plaintiff,<br><br>                    *against,*<br><br>FIRST AMERICAN CORPORATION and FIRST AMERICAN EAPPRAISEIT,<br><br>                                                     Defendants. | **ECF Case**<br><br>Civ. Action No.: 07-10397 (LTS) (HP) |

**REPLY MEMORANDUM OF LAW
OF DEFENDANTS THE FIRST AMERICAN
CORPORATION AND EAPPRAISEIT, LLC IN FURTHER
<u>SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT ..........................................................................................................................1

Point I

The Residual Power of The State to License and Discipline Appraisers Does Not
Authorize This Enforcement Action ......................................................................................1

A.  The State Lacks The Authority to Enforce Federal Regulations Governing a
    Thrift's Appraisal Panel Management ............................................................................1

B.  The States' Role in Appraisal Regulation is Limited to Licensing, Certifying
    and Disciplining Individual Appraisers .........................................................................3

C.  The Attorney General's Regulatory Efforts are Preempted Because They are
    in Conflict With the Detailed OTS Regulations Governing Appraiser
    Selection and Independence ...........................................................................................6

Point II

The Attorney General's Claim under general business law § 349 must be dismissed ........8

CONCLUSION .....................................................................................................................10

# TABLE OF AUTHORITIES

PAGE(S)

### Federal Cases

*Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005)..........................9

*Conboy v. AT&T*, 241 F.3d 242 (2d Cir. 2001) ............................................9, 10

*County of Westchester v. State of New York*, 286 F.3d 150 (2d Cir. 2002)...................8, 10

*Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982) ....................1, 2, 6

*Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178 (2d Cir. 2005) .............................2

*Fla. Bar v. Went for It*, 515 U.S. 618 (1995) .......................................................5

*Hines v. Davidowitz*, 312 U.S. 52 (1941) ..........................................................6

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) .....................................................6

*New England Tel. & Tel. Co. v. Public Utils. Comm'n*, 742 F.2d 1 (1st Cir. 1984)..........10

*New York City Envtl. Justice Alliance v. Giuliani*, 214 F.3d 65 (2d Cir. 2000) ..............8, 9

*Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979) ...............................10

### State Cases

*Walts v. First Union Mortgage Corporation*, 686 N.Y.S.2d 428 (1st Dep't 1999) .............9

### Federal Statutes

12 U.S.C. §§ 3346-3348 ................................................................................3, 4
12 U.S.C. § 1103.............................................................................................3

### Federal Regulations

12 C.F.R. §§ 564.2, 564.3, 564.4, 564.7 ........................................................5, 7
12 C.F.R. § 560.2(a)....................................................................................2, 6
12 C.F.R. Part 564........................................................................................7

### Other

Office of Thrift Supervision, *Independent Appraisal and Evaluation Functions* (October 27, 2003)........................................................................................8

Office of Thrift Supervision, *Interagency Appraisal and Evaluation Guidelines* (March 2005) ..........................................................................................8

# ARGUMENT

Defendants do not contest a state's power under FIRREA to certify, license or discipline individual appraisers. In this case, however, the Attorney General does not seek to exercise that power. His long analysis of the residual power of the State to regulate appraisers is thus beside the point. Here, the Attorney General seeks to sanction through enforcement litigation violations of federal law concerning the appraisal program of a federally chartered savings and loan, Washington Mutual, as administered by an appraisal management firm, eAppraiseIT. The State of New York lacks the authority to police the relationship between Washington Mutual and eAppraiseIT as it relates to the core savings and loan function of mortgage loan origination because that authority has been preempted by federal law. The State may seek to discipline individual appraisers in any manner consistent with FIRREA, but it cannot through this action regulate the conduct of Washington Mutual and eAppraiseIT. Congress has provided, and the OTS has exercised, broad authority to regulate a thrift's appraisal program. On this issue, there is no remaining basis for a state regulatory enforcement proceeding.

**Point I**

**THE RESIDUAL POWER OF THE STATE TO LICENSE AND DISCIPLINE APPRAISERS DOES NOT AUTHORIZE THIS ENFORCEMENT ACTION**

A.  THE STATE LACKS THE AUTHORITY TO ENFORCE FEDERAL REGULATIONS
    GOVERNING A THRIFT'S APPRAISAL PANEL MANAGEMENT

In his opposition, the Attorney General never addresses, let alone distinguishes, the federal legislation and regulations, as well as the controlling interpretive case law, cited by First American that demonstrate federal preemption of state law on the central issues in this matter. In particular, the Attorney General ignores entirely *Fidelity Fed.*

*Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982), in which the Supreme Court noted that Congress clearly envisioned that "federal savings [and loans] would be governed by what the [OTS] -- not any particular State -- deemed to be the 'best practices.'" *Id.* at 161. The Attorney General similarly disregards *Flagg v. Yonkers Sav. & Loan Ass'n, FA,* 396 F.3d 178 (2d Cir. 2005), in which the Court of Appeals for this circuit recognized the OTS' regulation of federal savings and loans to be "<u>so pervasive as to leave no room for state regulatory control</u>." *Id.* at 183-184 (emphasis added).

The Attorney General also ignores the substantial body of case law and legislative history regarding FIRREA's expansion of federal oversight of savings and loan associations to specifically include the composition and construction of their appraisal programs, as well as OTS' determination to "occupy the field," 12 C.F.R. § 560.2(a), and recognition of "the comprehensiveness of the HOLA language demonstrates that Congress intended the federal scheme to be exclusive, leaving no room for state regulation, conflicting or complementary." (*See* Hans Dec., Ex. B (OTS Opinion p-2003-2, issued Jan. 30, 2003, at 3 & n.14, citing, *inter alia*, *de la Cuesta*, 458 U.S. at 153)).

Rather than address the comprehensive scheme of federal law blanketing this area, the Attorney General baldly claims that "the extent of federal preemption regarding regulation of federal savings and loans <u>has nothing to do with this case</u>" because he "has not sued a federal savings and loan and does not seek to enforce any law regulating the lending activities of such associations." (Pl. Opp. Br., at 14) (emphasis added). This assertion surely comes as a surprise to those who heard the Attorney General and his staff announce, in more than one press conference following commencement of this action,

2

that the targets of their "case" expressly included "Washington Mutual."[1]  It is abundantly clear from these statements and the face of the Complaint that the true target of this action is Washington Mutual and its appraisal program, as administered by eAppraiseIT.  It should also be clear that just as the Attorney General (as he well understands) lacks the authority to sue Washington Mutual, he likewise lacks the authority to sue eAppraiseIT, the "instutition-afffilliated party" that administered Washington Mutual's appraisal program.

B.   THE STATES' ROLE IN APPRAISAL REGULATION IS LIMITED TO LICENSING, CERTIFYING AND DISCIPLINING INDIVIDUAL APPRAISERS

As in his motion to remand, the Attorney General cites to various state laws governing the licensing of and professional standards applicable to individual appraisers and seeks to recasts his Complaint as exercising those police powers.  (Comp ¶ 21; Pl. Opp. Br., at 13).  These laws would be relevant if this were the actual subject matter of the Complaint, but it is not.  The Complaint does not name or seek to discipline a single appraiser and is otherwise devoid of any claim or allegation of misconduct by any identified, individual appraisers.

In support of this smokescreen of an argument, the Attorney General cites 12 U.S.C. §§ 3346-3348 and Appraisal Subcommittee Policy Statements,[2] for the proposition that FIRREA "specifically contemplates dual state and federal regulation and enforcement of appraisal standards." (Pl. Opp. Br., at 13).  FIRREA does no such thing.

---

[1]   *See* Def. Mov. Br., at 14; Hans Dec., Ex. H (Transcript of November 7, 2007 Attorney General Press Conference, explicitly discussing focus on Washington Mutual).

[2]   The Appraisal Subcommittee was established by Title XI of FIRREA to monitor the certification and licensing programs for individual real estate appraisers in each State to determine whether the State's policies, practices and procedures are consistent with Title XI and enforcing the State's compliance with the requirements of Title XI. 12 U.S.C. § 1103.

3

Indeed, Sections 3346-3348 of FIRREA relate solely to the states' certification and licensing of individual appraisers, and thus highlight the limited nature and scope of a state's role with respect to appraisals performed in federally related transactions.[3] These provisions (i) allow a state to establish an appraiser certifying and licensing agency (§ 3346); (ii) give the Appraisal Subcommittee the power to monitor those state certifying and licensing agencies (§ 3347); (iii) require that all appraisals performed in connection with federally related transactions be performed by appraisers certified or licensed in accordance with Chapter 34a of FIRREA (§ 3348); and (iv) provide that instances of appraiser misconduct be referred to the states for resolution (§ 3348).[4]

The Attorney General offers a hypothetical situation in which "an individual appraiser . . . unlawfully accepts an appraisal assignment . . . contingent upon the valuation he gives." In that situation, he maintains, the state is afforded primary authority to enforce federal independence standards. (Pl. Opp. Br., at 16). Even if the Attorney General were correct, this hypothetical is hardly compelling because that is not the power the Attorney General purports to exercise in bringing this action. Indeed, there is no authority of which First American is aware, and none is offered by the Attorney General, which affords any state the authority to bring an action enforcing federal regulations and

---

[3] The legislative history of FIRREA cited by the Attorney General, including the comments of Sen. Dodd, specifically relate to §§3346-3348 and are therefore similarly limited to the States' power to license individual appraisers.

[4] The duties contemplated by the Appraisal Subcommittee, which include, among others, (i) receiving, reviewing, and/or approving applications for initial certification or licensure, credential renewals and temporary practice and reciprocity applications; (ii) analyzing the qualifications of appraiser applicants; (iii) reviewing and/or approving qualifying and continuing education courses; (iv) answering inquiries related to the State's appraiser licensing and certification program; and (v) assisting in the investigation/disciplinary process regarding certified or licensed appraisers, further illustrate the administrative nature of the States' role. *See Appraisal Subcommittee Policy Statements Regarding State Certification and Licensing of Real Estate Appraisers*, available at http://www.asc.gov/html/frameSet.aspx?assetPath=/uploads/Policy%20Statements\PolicyStatements2007Final.pdf (last visited February 22, 2008).

4

guidelines governing how a thrift may employ an appraisal management company to manage a panel of appraisers. That is the issue here and those are the powers vested exclusively in the OTS.

The Attorney General's attempt to limit the OTS' right to enforce its appraisal regulations against "institution-affiliated parties" likewise misses the mark. (*See* Pl. Opp. Br., at 15-16.)  The Attorney General does not dispute First American's status as an "institution-affiliated party" under § 1813(u)(4) of FIRREA,[5] but rather claims that this section only permits OTS to institute "administrative proceedings" against independent contractors who engage in knowing and reckless wrongdoing that harms a financial institution and does not preclude a state from enforcing federal independence standards against such parties.  No such limitation on federal enforcement power may be found in the express language of this statute and indeed the Attorney General offers no support or independent basis for his uniquely limiting interpretation of § 1813(u)(4).  To be sure, First American remains an institution-affiliated party and thus subject to OTS' pervasive regulations governing panel composition and appraiser selection.  *See* 12 C.F.R. §§ 564.2, 564.3, 564.4, 564.7.[6]

The Attorney General's sweeping assertion that there is nothing in FIRREA that suggests this "federal enforcement power was meant to be exclusive" is demonstrably

---

[5]  OTS has determined First American to be an "institution-affiliated party" and has asserted its status as the regulator of First American.  *See* Hans Dec., Ex. G, (Letter from Nicholas Dyer, Ass't Director of the OTS, dated November 6, 2007).

[6]  The Attorney General's reliance on *Fla. Bar v. Went for It*, 515 U.S. 618 (1995), only highlights the hole in his logic.  There, Florida retained the right to discipline attorneys, licensed in the state, for misconduct in work performed for thrifts.  *Went for It*, 515 U.S. at 635.  Therein lies the rub for the Attorney General.  His Complaint does not purport to discipline any individual appraisers licensed by the State for misconduct within the State, but rather seeks to punish First American and its affiliate eAppraiseIT, neither of which are individual appraisers subject to appraisal licensing requirements, for their management of a panel of appraisers for Washington Mutual.

5

wrong. (Pl. Opp. Br., at 15)  Except in the limited arena of oversight of licensing and the disciplining of individual appraisers, Congress and the OTS have expressed every intention of occupying the field *exclusively*.  *See, e g.*, 12 C.F.R. § 560.2(a); (Hans Dec., Ex. B (OTS Opinion P-2003-2, Jan. 30, 2008)).  Expression of this intent to occupy the field, and judicial recognition thereof, is indisputable.  *See, e.g.*, *de la Cuesta*, 458 U.S. at 144, 161.[7]

C.     THE ATTORNEY GENERAL'S REGULATORY EFFORTS ARE PREEMPTED BECAUSE THEY ARE IN CONFLICT WITH THE DETAILED OTS REGULATIONS GOVERNING APPRAISER SELECTION AND INDEPENDENCE

The Attorney General's reliance on federal statutes, regulations and guidelines belies any attempt to recharacterize the claims as seeking only to enforce state law.  (*See, e.g.*, Compl. ¶¶ 18 and 19).[8]  By its very existence, the Complaint represents an attempt by the State to regulate appraisal panel composition under state law and that fact is necessarily "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" – to empower the OTS to fully occupy the field and impose uniform national standards – and thus is necessarily preempted.  *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).  Any action here by the Attorney General is necessarily inconsistent with Congress' stated intention to give OTS exclusive power to regulate this arena.

---

[7]     The Attorney General's reference to *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996), is most curious.  *Medtronic* offers the Supreme Court's assessment of the preemptive effects of the federal Medical Device Amendments and related FDA regulations and does not address any law or regulation at issue here.  Indeed, *Medtronic* stands for the unsurprising proposition that the preemptive nature of a particular law may be gleaned from legislative history, statutory language and the stated regulatory intent of the federal agency, 518 U.S. at 487-91, 498-99, none of which were present there, but all of which are present here. *See* Def. Mov. Br., at 4-16.

[8]     The cases cited by the Attorney General in support of his right to bring claims predicated on federal law under Executive Law § 63(12) are unpersuasive here.  In those cases, the federal law at issue was not intended by Congress to preempt the field.

6

The Attorney General strains credulity when he suggests that if the facts pleaded in the Complaint demonstrate a violation of federal law, then his state law claims do not conflict with the federal law. First, the facts pleaded do not demonstrate any such violation (*See* Def. Mov. Br., at 15-20, for a complete recitation of the applicable federal regulations and guidelines, including 12 C.F.R. Part 564 and the 2003 Interagency Guidelines, and how the Attorney General has misapplied those regulations). Second, for the very reasons discussed *infra* at Point II, the Attorney General does not possess a private right of action to pursue a remedy for violation of the federal regulations and thus any attempt to assert a state law claim for such a violation necessarily conflicts with the OTS' federal regulatory scheme.

The Attorney General's attempt to claim uniformity of regulations through reference to USPAP is unavailing. Both state and federal law concededly incorporate USPAP. But while USPAP sets professional standards by which individual appraisers operate, it does <u>not</u> cover appraisal panel management and the selection process to be employed by a federally regulated thrift. The OTS regulations, in contrast, separate and apart from any reference to USPAP, expressly regulate a thrift's appraisal panel program, all as part of the OTS' exclusive occupation of the field of thrift regulation. *See, e.g.*, 12 C.F.R. §§ 564.2, 465.5.[9]

The Attorney General attempts to dismiss First American's reference to defined terms when reading the federal regulators' FAQ #5[10] as "hypertechnical parsing." (Pl.

---

[9] First American need not prove its conduct did not violate federal standards for it to prevail on its motion to dismiss. While First American maintains that the Attorney General's allegations prove nothing, its motion to dismiss is based on principles of federal preemption and lack of standing, not failure to state a claim under federal law. (*See generally* Def. Mov. Br.).

[10] FAQ #5, issued by the federal regulators in 2005, provides:

7

Opp. Br., at 19). In their 2003 Interagency Guidelines, however, the federal regulators gave the term "selecting" a specific meaning and it is not for the Attorney General of the State of New York to apply some other, more convenient meaning to the term. "Selecting" or "selection" refer to only to the assignment of an appraisal of a particular property. *See* Office of Thrift Supervision, *Independent Appraisal and Evaluation Functions* (October 27, 2003), available at http//www.ots.treas.gov/docs/2/25184.pdf (last visited February 22, 2008). If a thrift's loan production staff is not "selecting" the appraiser – which did not occur here because eAppraiseIT performed that function – then FAQ #5 is inapplicable. (*See also* Hans Dec., Ex. L (Statement of Tom Watson, OCC National Bank Examiner and Credit Risk Specialist); Def. Mov. Br., at 17-20).[11]

**Point II**

**THE ATTORNEY GENERAL'S CLAIM
UNDER GENERAL BUSINESS LAW § 349 MUST BE DISMISSED**

A party seeking "a private remedy bears the burden of demonstrating that Congress intended to make one available." *County of Westchester v. State of New York*, 286 F.3d 150, 152 (2d Cir. 2002) (quoting *New York City Envtl. Justice Alliance v.*

---

> *When **selecting** residential appraisers, may loan production staff use a revolving pre-approved appraiser list, provided the list is not under their control?*
> Answer: Yes, loan production staff may use a revolving, board-approved list to select a residential appraiser, provided the development and maintenance of the list is not under their control. Staff responsible for the development and maintenance of the list should be independent of the loan production process.

Office of Thrift Supervision, *Interagency Appraisal and Evaluation Guideline,* (March 2005), *available at* http://www.ots.treas.gov/docs/2/25213.pdf, last visited February 22, 2008.

[11]   The Attorney General's argument here again highlights the indisputable existence of questions of federal law and the primacy of federal interests. He may not argue the application of federal law where convenient here and then claim it does not apply in his motion to remand.

8

*Giuliani*, 214 F.3d 65, 73 (2d Cir. 2000)). The Attorney General has fallen woefully short of the burden imposed.

The Attorney General cites to but a single case in support of his argument that federal law does not preclude his claims, *Walts v. First Union Mortgage Corporation*, 686 N.Y.S.2d 428 (1st Dep't 1999). *Walts* hardly offers any support, as it held that the plaintiffs' GBL § 349 claims were "mere attempts at 'artful pleading' to circumvent [the] bar against private actions" under Insurance Law § 6503. This "artful pleading" is precisely what the Attorney General is impermissibly attempting to do in the instant matter.

*Conboy v. AT&T,* 241 F.3d 242 (2d Cir. 2001), and *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005) are dispositive. (*See* Def. Mov. Br., at 20-24). The Attorney General's attempt to distinguish this authority by noting that "the Attorney General is not a private plaintiff" is unavailing. (Pl. Opp. Br., at 22). The Attorney General's Complaint does not assert a claim under any of the state statutes governing appraiser licensing which he now belatedly claims are applicable. Instead, he seeks to enforce federal regulations by artfully pleading a consumer protection claim. But, in bringing a § 349 claim, the Attorney General stands in the shoes of the New York consumer and so may not seek to assert that which a private plaintiff cannot. The concern expressed in *Conboy* is no less applicable here:

> Indeed, a private right of action would place the FCC's 'interpretative function squarely in the hands of private parties and some 700 federal district judges, instead of in the hands of the Commission. . . .The result would be to deprive the FCC of necessary flexibility and authority in creating, interpreting, and modifying communications policy.'

*Conboy*, 241 F.3d at 253 (quoting *New England Tel. & Tel. Co. v. Public Utils. Comm'n*, 742 F.2d 1, 6 (1st Cir. 1984) (holding that permitting a private right of action transfers regulatory interpretation and discretion from the federal agency, where Congress intended it to be, to the courts)). Allowing Attorneys General to separately interpret and enforce OTS regulations through application of generic consumer protection laws would create the very chaos Congress intended to avoid when it passed FIRREA and empowered the OTS to create and enforce uniform federal appraisal panel standards.[12]

## CONCLUSION

For the foregoing reasons, defendants The First American Corporation and eAppraiseIT, LLC, respectfully request that this Court enter an order (i) granting defendants' motion to dismiss the Complaint in its entirety; and (ii) granting such other and further relief that the Court deems just and proper.

Dated: New York, New York
       February 22, 2008

THACHER PROFFITT & WOOD LLP

By:   /s/ Richard F. Hans
     Richard F. Hans
     Patrick J. Smith
     Kerry Ford Cunningham

Two World Financial Center
New York, New York 10281
Tel.: (212) 912-7400
rhans@tpw.com
psmith@tpw.com
kcunningham@tpw.com

*Attorneys for The First American Corporation and eAppraiseIT, LLC*

---

[12] In determining whether a private right of action exists, the identity of the private plaintiff is not the determining factor, but rather Congressional intent. *See County of Westchester*, 286 F.3d at 152 (holding that the County did not have a private right of action to enforce the Individual's with Disabilities Education Act substantive provisions because Congress did not provide one), s*ee also Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 20 (1979) (it was "highly improbable that Congress absentmindedly forgot to mention an intended private action"). Here, it is clear that Congress entrusted the OTS with exclusive regulatory authority over federal savings and loans, and their institution-affiliated parties.