UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                 :

THE PEOPLE OF THE STATE OF NEW YORK  :
by ANDREW M. CUOMO, Attorney General of  :`     ECF Case
the State of New York,                                :
                                 :     07 Civ. 10397 (LTS) (HBP)
               Plaintiff,    :

-against-                   :

FIRST AMERICAN CORPORATION and       :     ORAL ARGUMENT REQUESTED
FIRST AMERICAN EAPPRAISEIT,           :

               Defendants.  :
-------------------------------------------------------------x

# PLAINTIFF'S REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF MOTION TO REMAND

                                            ANDREW M. CUOMO
                                            Attorney General of the State of New York
                                            120 Broadway, 25th Floor
                                            New York, New York 10271
                                            Tel: (212) 416-6053

NICOLE GUERON
RICHARD DEARING
CHRISTOPHER MULVIHILL

    – of counsel –

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT .......................................................................................................................... 2

    REMAND IS REQUIRED BECAUSE FEDERAL
    SUBJECT MATTER JURISDICTION IS LACKING ..................................................... 2

        A.    No Question of Federal Law Is a Necessary
               Element of the State's Claims for Relief ................................................... 3

        B.    Any Federal Question Implicated Here Is Not Substantial ....................... 8

        C.    A Finding of Federal Question Jurisdiction Would Disturb
               the Balance of Federal and State Judicial Responsibilities .................... 10

CONCLUSION .................................................................................................................... 10

## TABLE OF AUTHORITIES

**CASES**                                                                                                                               **PAGE**

Empire Healthchoice Assurance, Inc. v. McVeigh,
    547 U.S. __, 126 S. Ct. 2121 (2006) ............................................................................... 2

Franchise Tax Bd. v. Constr. Laborers Vacation Trust,
    463 U.S. 1 (1983) ............................................................................................................. 6

Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg.,
    545 U.S. 308 (2005) ..................................................................................................... 2, 8

People v. Federated Radio Corp.,
    244 N.Y. 33 (1926) .......................................................................................................... 4

State v. Gen. Elec. Co.,
    302 A.D.2d 314 (1st Dep't 2003) .................................................................................... 4

State v. Sonifer Realty Corp.,
    212 A.D.2d 366 (1st Dep't 1995) .................................................................................... 4

Steel Co. v. Citizens for a Better Env't,
    523 U.S. 83 (1998) ........................................................................................................... 5

**FEDERAL STATUTES AND REGULATIONS**

12 U.S.C. § 3339 ....................................................................................................................... 8

12 U.S.C. § 3348 ....................................................................................................................... 9

28 U.S.C. § 1447. ...................................................................................................................... 1

12 C.F.R. § 564.4 ...................................................................................................................... 8

12 C.F.R. § 564.5 ...................................................................................................................... 8

**NEW YORK STATUTES AND REGULATIONS**

Executive Law § 63 ............................................................................................................... 1, 3

General Business Law § 349 ................................................................................................. 1, 3

19 N.Y.C.R.R. § 1106.1 .......................................................................................................... 5, 7

## TABLE OF AUTHORITIES (cont'd)

**MISCELLANEOUS AUTHORITIES**                                                                 **PAGE**

135 Cong. Rec. S3993 (daily ed. Apr. 17, 1989) ........................................................................... 9

Appraisal Standards Board, Advisory Opinion 19, available at
http://commerce.appraisalfoundation.org/html/USPAP2008/AOs/
ao_19_.htm (last visited Fed. 22, 2008) .................................................................................. 4-5

Federal Financial Institutions Examination Council, Appraisal Subcommittee,
Policy Statements Regarding State Certification and Licensing of Real Estate
Appraisers, available at http://www.asc.gov/html/frameSet.aspx?assetPath=/
uploads/Policy%20Statements\PolicyStatements2007Final.pdf (last visited Feb. 22, 2008) ... 8, 9

The First American Corp., 2006 Annual Report 13, available at
http://thomson.mobular.net/ thomson/7/2346/2577 (last visited Feb. 22, 2008) .......................... 4

USPAP Ethics Rule (Conduct), available at
http://commerce.appraisalfoundation.org/html/2006%20USPAP/ETHICS_RULE.htm .......... 5-6

Plaintiff, the People of the State of New York, by Andrew M. Cuomo, Attorney General of the State of New York (the "State" or the "Attorney General"), submits this reply memorandum of law in further support of its motion to remand this case to the Supreme Court of the State of New York, New York County, pursuant to 28 U.S.C. § 1447.

**PRELIMINARY STATEMENT**

Defendants argue that federal jurisdiction exists here because the Attorney General's claims, all of which are brought under New York law, nevertheless necessarily raise substantial and disputed questions of federal law, and because exercising jurisdiction here would not disturb the balance of federal and state judicial responsibilities. None of these contentions is correct, however, and this case must be remanded to New York state court for lack of federal jurisdiction.

First, the complaint does not <u>necessarily</u> raise any federal question because the Attorney General can establish his claims without reference to federal law. As defendants correctly observe, this case is about "appraiser independence." Defs.' Mem. of Law in Opp'n to Mot. to Remand (Defs.' Remand Opp'n") at 10. But appraiser independence is not defined by federal law alone. To the contrary, the Uniform Standards of Professional Appraisal Practice ("USPAP") set the industry standard as to appraiser independence, and they are incorporated into New York law and federal law. Defendants publicly claimed to adhere to USPAP rules, but they did not. They thereby engaged in fraudulent and deceptive practices actionable under Executive Law § 63(12) and General Business Law § 349. They also acted "illegally" within the meaning of Executive Law § 63(12) because they violated the New York regulation that adopts and incorporates USPAP rules. Neither of these theories of liability presents any question of federal law. The fact that plaintiff's third, analogous theory of liability relies on defendants' violation of the federal law incorporating USPAP does not create federal jurisdiction.

1

Moreover, and independently, any federal question implicated here is not so substantial as to require resolution in a federal forum. The main question is whether defendants violated USPAP rules of appraiser independence, which are developed by a private non-profit organization and incorporated into both state and federal law. There is no particular federal interest regarding the interpretation of those rules. Defendants claim that the federal interest in this area is evident from the fact that federal law occupies the field of appraiser regulation, but their premise is incorrect. Far from occupying the field, Congress expressly contemplated that the States would serve a central role in regulating and enforcing appraisal standards.

Finally, recognizing federal jurisdiction here would disturb the division of judicial labor between the federal and state courts because it would open the federal courts to numerous suits under state consumer protection statutes that allege violations of both state and federal law.

## ARGUMENT

### REMAND IS REQUIRED BECAUSE FEDERAL SUBJECT MATTER JURISDICTION IS LACKING

Defendants contend that this suit falls within the "special and small category" of cases that, although involving causes of action created by state law, are deemed nevertheless to "arise under" federal law for jurisdictional purposes because "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Empire HealthChoice Assurance, Inc. v. McVeigh, 547 U.S. __, 126 S. Ct. 2121, 2131 (2006) (internal quotation marks omitted). However, a case falls into this "slim" class, id. at 2137, only if three narrowly drawn conditions are satisfied. See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005). First, the "state-law claim [must] necessarily raise a stated federal issue." Id. Second, that federal issue must be "actually disputed and substantial." Id. Third, the federal question must be one that "a federal

2

forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. As explained in the Attorney General's opening memorandum, and elaborated further below, no prong of this test is met here.

### A. No Question of Federal Law Is a Necessary Element of the State's Claims For Relief.

This case does not necessarily raise any federal question because it is possible for the Attorney General to establish the affirmative elements of each of his claims based solely on New York law, and without reference to federal law. See A.G. Mem. of Law in Support of Mot. to Remand ("A.G. Remand Mem."), at 8-11. Paragraph nine of the Attorney General's complaint alleges that defendants' conduct "constitutes a deceptive, fraudulent, and illegal business practice" that "violates New York law as well as federal law and regulations." This paragraph encompasses three distinct theories of liability: (1) defendants' practices were "fraudulent" within the meaning of Executive Law § 63(12) and "deceptive" within the meaning of General Business Law § 349; (2) defendants' practices were "illegal" under § 63(12) because they violated New York law and regulations; and (3) defendants' practices were "illegal" under § 63(12) because they violated federal law and regulations. Because the first two theories are entirely independent of federal law, the Attorney General's claims do not "necessarily" present any federal issue as an essential element. Hence they do not "arise under" federal law for jurisdictional purposes.

In their opposition, defendants ignore altogether the complaint's allegations that they committed fraudulent and deceptive practices within the meaning of Executive Law § 63(12) and General Business Law § 349. This omission is fatal to their position. As the Attorney General has explained, the terms "fraudulent" and "deceptive" under those statutes reach far beyond traditional common-law fraud. A.G. Mem. of Law in Opp'n to Mot. to Dismiss, at 7-9. To prove "fraud" under

3

§ 63(12), for example, the Attorney General need not establish reliance, actual deception, or intent to deceive. See State v. Gen. Elec. Co., 302 A.D.2d 314 (1st Dep't 2003); State v. Sonifer Realty Corp., 212 A.D.2d 366, 367 (1st Dep't 1995). Rather, the statute encompasses "all deceitful practices contrary to the plain rules of common honesty," People v. Federated Radio Corp., 244 N.Y. 33, 38-39 (1926), and asks only "whether the targeted act has the capacity or tendency to deceive, or creates an atmosphere conducive to fraud," Gen. Elec., 302 A.D.2d at 314.

According to the complaint, defendants engaged in fraudulent and deceptive practices by publicly claiming that they ensured adherence to USPAP standards, while they in fact systematically violated them. The Attorney General alleges that eAppraiseIT's website expressly stated that "customers can be assured that Uniform Standards of Professional Appraisal Practice (USPAP) . . . guidelines are followed and that each appraisal is audited for compliance." Compl. ¶ 23 (internal quotation marks omitted). Similarly, First American's 2006 annual report assured readers that "First American's third-party, unbiased valuations . . . benefit[] not only the homeowner and lender, but our nation's economy," and boasted that "First American's warranted valuations, which are supported by our third-party perspective and backed by more than a century of integrity, virtually eliminate [the] risk" that fraudulent and inaccurate appraisals pose to homeowners. The First American Corp., 2006 Annual Report 13, available at http://thomson.mobular.net/thomson/7/2346/2577 (last visited Feb. 22, 2008); see Compl. ¶ 7. Meanwhile, the complaint alleges, defendants were repeatedly violating USPAP standards by creating assignment conditions that destroyed the independence of the persons who conducted and reviewed appraisals, and by providing appraisal reports created under those conditions to Washington Mutual ("WaMu"). Compl. ¶¶ 24-90; see also Appraisal Standards Board, Advisory Opinion 19, available at http://commerce.appraisalfoundation.org/html/USPAP2008/AOs/ao_19_.htm (last visited Fed. 22,

4

2008) (explaining that "assignment conditions that compromise an appraiser's impartiality and objectivity in an assignment are unacceptable," and mandating that appraisers refuse to accept assignments under such conditions).

In particular, the complaint alleges that defendants implemented assignment conditions whereby an appraiser's eligibility for assignments from WaMu was conditioned on delivering the property values that WaMu needed to close loans. Compl. ¶¶ 28-46. The complaint also alleges that defendants created a system whereby appraisers who refused to inflate property values lost business. Compl. ¶¶ 70-83. By doing these things, defendants contradicted their public promises and fell far short of the appraisal standards that consumers can reasonably expect to be satisfied. The complaint alleges that this constitutes "fraud" within the meaning of § 63(12). The ultimate merits of that contention, of course, are not before the court on this motion to remand for lack of jurisdiction. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93-95 (1998) (emphasizing that the question of jurisdiction is distinct from the merits of a claim). The critical point is that no question of federal law is a necessary element of the Attorney General's claim.

The complaint further alleges that defendants' conduct violated New York law, and for this reason was "illegal" within the meaning of Executive Law § 63(12). See Compl. ¶¶ 9, 18, 21. This theory, too, raises no question of federal law. As the complaint points out, New York law incorporates USPAP rules. See Compl. ¶¶ 18, 21. Specifically, 19 N.Y.C.R.R. § 1106.1(a) provides that "[e]very appraisal assignment shall be conducted and communicated in accordance" with USPAP standards. USPAP mandates that "an appraiser must perform assignments with impartiality, objectivity, and independence, and without accommodation of personal interests." USPAP Ethics Rule (Conduct), available at http://commerce.appraisalfoundation.org/html/2006%20USPAP/

5

ethics_rule.htm (last visited Feb. 22, 2008). Again, the complaint alleges that defendants violated USPAP rules of appraiser independence. That contention presents no federal question.

Defendants' main counter to this point rests upon a distortion of the Attorney General's complaint. Defendants repeatedly quote the complaint's statement that "[f]ederal law sets independence standards for appraisers involved in federally-regulated transactions." Defs.' Remand Opp'n at 1, 10 (quoting Compl. ¶ 19) [alteration added]. Defendants then assert multiple times that the Attorney General thereby "admitt[ed] that federal law controls" the issue of appraiser independence. Id. at 13, see also id. at 2, 11. That is untrue. The complaint merely notes that federal law sets appraisal standards for federally related transactions. The complaint does not say, nor would it be correct to say, that those federal standards are exclusive. To the contrary, the complaint expressly alleges that defendants violated New York law governing appraiser independence, which adopts and incorporates the same USPAP standards that are incorporated into federal law. Compl. ¶¶ 9, 18, 21.

Apart from this manufactured "admission," defendants' suggestion that federal law displaces all state law as to appraisal standards has no bearing on the jurisdictional inquiry.[1] The well-pleaded complaint rule excludes consideration of "[any] federal defense, including the defense of pre-emption" in determining whether there is federal jurisdiction. Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 14 (1983). The existence of federal jurisdiction, rather, must be determined based solely on the affirmative elements of the claims alleged in the Attorney General's complaint. See A.G. Remand Mem. at 6. Apparently recognizing this principle, defendants'

---

[1] Defendants' preemption arguments are also baseless for the reasons explained in the Attorney General's memorandum opposing defendants' motion to dismiss. A.G. Mem. of Law in Opp'n to Mot. to Dismiss at 12-21.

memorandum does not mention the word "preemption." But defendants merely dress a preemption argument in different garb by asserting that any state-law claim "necessarily bumps into controlling federal law," that federal law inescapably "controls all appraisal issues in a mortgage loan originated by a federally chartered thrift," and that "[t]here . . . is no viable 'parallel' state law to apply" here. Defs.' Remand Opp'n at 13. In substance, these are arguments that federal law preempts, and they have no place in determining whether there is federal jurisdiction.

Defendants also argue that New York law speaks only to the licensing of individual appraisers, and does not address the independence of appraiser panels. Defs.' Remand Opp., pp. 11-12. As an initial matter, that contention goes to the merits and therefore is irrelevant to the question of jurisdiction. But in any event, New York law does not reflect the distinction that defendants suggest. New York regulations require that real estate appraisals conform to USPAP rules. See 19 N.Y.C.R.R. § 1106.1(a) . The complaint alleges that defendants' conduct in providing appraisals for WaMu, including their use of the Proven Appraiser Panel, violated USPAP rules and therefore violated New York law. Defendants' position not only lacks any textual support, but it would exempt a huge swath of the modern appraisal industry from state regulation, effectively placing appraisal management companies as a category beyond the reach of New York law. This would be contrary to Congress's express intention that States would serve the leading role in enforcing appraisal standards. See A.G. Mem. of Law. in Opp. to Mot. to Dismiss, pp. 3-7, 12-16. And even if defendants' cramped reading of New York law were correct (and it is not), the complaint does allege that individual appraisers employed by defendants faced, and succumbed to, pressure from WaMu loan production staff to change particular property valuations. Compl. ¶¶ 84-89.

**B.     Any Federal Question Implicated Here Is Not Substantial.**

Even if the State's claims necessarily presented a question of federal law (which they do not), federal jurisdiction would nevertheless be lacking because any federal issue here is not "a substantial one," meaning an issue that "indicat[es] a serious federal interest in claiming the advantages thought to be inherent in a federal forum." <u>Grable</u>, 545 U.S. at 313.

In an effort to make this case look like <u>Grable</u>, defendants argue that it will require the construction and application of 12 C.F.R. § 564.5, which describes certain independence standards for staff and fee appraisers. Defs. Remand Opp'n at 14. But that regulation has little bearing on this case. Instead, the key federal regulatory provision is 12 C.F.R. § 564.4(a), which incorporates USPAP rules by reference. <u>See also</u> 12 U.S.C. § 3339 (mandating that federal agencies adopt USPAP as minimum standards). Because USPAP rules were developed by a private non-profit organization, not by any federal agency, defendants cannot credibly claim that there is a peculiar federal interest in the interpretation or application of those rules. That is especially true given that the federal Appraisal Subcommittee has urged the States also to adopt USPAP as minimum appraisal standards, which all States now have done.  Appraisal Subcomm., Policy Statements, at 12, <u>available at</u>  http://www.asc.gov/html/frameSet.aspx?assetPath=/uploads/Policy%20Statements\PolicyStatements2007Final.pdf (last visited Feb. 20, 2008). There is no distinctly federal interest in the USPAP rules that militates for a federal forum.

Furthermore, unlike <u>Grable</u> this case does not involve a challenge to action taken by a federal administrative agency.  Nor, even, is any federally chartered entity a party here. And while defendants contend that "[t]he federal savings and loan industry is as thoroughly subject to federal regulation as possible" (Defs.' Remand Opp'n at 16), this case is not about the regulation of the savings and loan industry.  It is about the regulation of appraisal standards. Defendants' continued

8

attempts to conflate these two distinct fields of regulation is meritless. Regardless of whether federal law preempts state law as to the regulation of the mortgage lending function of federal savings and loans, it is clear that, in FIRREA, Congress expressly contemplated a central role for the States in the regulation and enforcement of appraisal standards. See AG Mem. of Law in Opp'n to Mot. to Dismiss at 3-7, 12-21.

In fact, a Senate sponsor of FIRREA observed before the Act's passage that "[t]he key to [the FIRREA provisions regarding real estate appraisal standards] lies in the creation of State regulatory agencies and a Federal watchdog to monitor the standards and to oversee State enforcement [of those standards]. . . . It is this combination of Federal and State action. . . that is the key to assuring that good [appraisal] standards are properly enforced." 135 Cong. Rec. S3993, S4004 (daily ed. Apr. 17, 1989) (remarks of Sen. Dodd). Consequently, federal law decidedly does not "supersede all state law on the subject" of appraisal standards, as defendants claim (Defs.' Remand Opp'n at 17). To the contrary, the Appraisal Subcommittee has acknowledged that States may develop their own appraisal standards that go beyond even what USPAP requires. See Appraisal Subcomm., Policy Statements at 12 ("Any State . . . agency . . . may impose additional appraisal standards if they consider such standards necessary to carry out their responsibilities.").

Any claimed need for a federal forum here is further undercut by the fact that FIRREA vests the States with primary authority to bring enforcement proceedings against appraisers who fail to adhere to appraisal standards. See 12 U.S.C. § 3348(c). Despite defendants' contentions (Defs.' Remand Opp'n at 17-18), no pressing need for a federal forum arises from the simple fact that this case seeks to enforce such appraisal standards against entities that are in the business of providing appraisal services, rather than against an individual appraiser.

9

### C. A Finding of Federal Question Jurisdiction Would Disturb the Balance of Federal and State Judicial Responsibilities.

As the Attorney General has previously explained, even if a substantial federal question were necessarily presented by the State's claims (which it is not), federal jurisdiction still would not exist because opening a federal forum to all state consumer protection suits like this one would "disturb[] [the] congressionally approved balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314. See A.G. Remand Mem. at 13-14. On this point, defendants essentially argue that federal jurisdiction exists where a substantial federal question is necessarily presented regardless of the effect on the balance of federal and state judicial responsibilities (Defs.' Remand Opp'n at 19). But this defies Grable's clear holding that disruption of the division of judicial labor between federal and state courts is an independent limitation on the scope of federal jurisdiction, even in cases that admittedly turn on substantial questions of federal law. In other words, the potential for disturbing the balance of federal and state judicial responsibilities is a separate prong in the Grable inquiry; it cannot be satisfied by merely pointing back to the existence of substantial federal question (which, in any event, is lacking here).

## CONCLUSION

For the foregoing reasons, there is no federal subject matter jurisdiction over this action, and the case therefore should be remanded to New York State Supreme Court, New York County.

Dated: New York, New York
      February 22, 2008                              Respectfully submitted,

                                                 ANDREW M. CUOMO
                                                 Attorney General of the State of New York
                                 By:    /s/ Nicole Gueron
                                                 NICOLE GUERON (NG-7682)
                                                 Deputy Chief Trial Counsel
                                                 120 Broadway, 25th Floor
                                                 New York, New York  10271